UNITED STATES *v.* AUTOMATIC TOTALISATORS, INC.

**No. 5063.**—Invoices dated Sydney, Australia, October 24, 1931; September 24, 1932; October 2, September 30, 1931.

Entered at Miami, Fla., December 2, 1931; October 27, 1932; November 17, 12, 1931.

Entry Nos. M–164, M–74, M–147, M–138.

## Second Division, Appellate Term

(Decided December 9, 1940)

*Webster J. Oliver,* Assistant Attorney General (*William J. Vitale,* special attorney), for the appellant.

*S. Pierre Robineau* for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges; DALLINGER, J., dissenting

TILSON, Judge: This is an application for review of a decision of the trial court in which it was held that the proper dutiable export value of this imported totalisator machine was the entered value. This machine was designed and constructed to operate and record the wagering at American race tracks under the pari-mutuel system, and was installed at the Hialeah race track near Miami, Fla.

The merchandise was entered and appraised on the basis of cost of production. The appraiser, however, added to the entered value an item of 8 per centum for profit in compliance with section 402 (f) of the Tariff Act of 1930. Through the entire litigation before the trial court the appellee herein made no contention that the cost of production was not the proper basis of appraisement, but simply contended that the 8 per centum for profit, added by the appraiser, had been added by the subcontractors and that, therefore, the addition of this amount by the appraiser amounted to a double addition thereof. All the evidence introduced by the appellee was offered in an effort to show that this item of 8 per centum was not properly a part of the cost of production.

The above theory upon which this case was tried and submitted was recognized by the trial court, as is made clear from the following quotation from its decision:

This the sole advance is disputed by the importer upon the ground that the machine largely consists of parts made by subcontractors whose individual profits each amounted to more than 8 per centum, as the record shows. It is, therefore, claimed that to add the 8 per centum profit would be a double addition for profit and, therefore, arbitrary and not permissible.

With this contention of the importer we cannot agree as the cost of production formula, always more or less arbitrary and uncertain in its nature, intends to treat the shipper who does more than mere assembling as the manufacturer, as the very substantial cost shown by this record as incurred by the shipper in assembling and putting together and adjusting the various parts indicates, even if that does result in duplicating the profits of the subcontractors.

We agree with the holding of the trial court as stated in the second paragraph quoted above to the effect that since the record shows a very substantial cost was incurred by the shipper in assembling and putting together and adjusting the various parts of this machine, after received from the subcontractors, the shipper in this case must be considered as the manufacturer, even if that does result in duplicating the profit of the subcontractors.

However, the trial court refused to decide the case on the theory upon which it was tried and submitted, as shown by the following from its decision:

However, we do not consider this is a case for the application of the so-called cost of production substituted value for the reasons set forth hereafter.

With the ingenious reasons set forth by the trial court why it did not consider this a case for the application of the cost of production value we are in complete disagreement. As heretofore stated, this machine was appraised on the basis of cost of production, and, until the importer has shown by proper evidence that the cost of production basis adopted by the appraiser was erroneous, this court is bound under the law to accept the presumptively correct cost of production basis as the proper basis of appraisement.

Evidence offered in an effort to show that the 8 per centum for profit added by the appraiser had already been added by the subcontractors, and that therefore the addition of this 8 per centum by the appraiser would be a double addition for profit, falls far short of establishing that the cost of production basis is not the proper basis of appraisement.

At the very first hearing of this case counsel for the importer made the following statement:

* * * These gentlemen were to pay the cost of production of the machines. * * * There being no American machine made, there being no profit, * * * we feel that the imposition of the 8 per cent profit was not correct at this time. * * * If proof is necessary to establish the no profit feature, then I will have to get my people from Australia. * * * I think I can prove by the manufacturer that the profit of the manufacturer, and in all probability the royalty, was included.

At the second hearing counsel for the importer stated as follows:

I am quite sure we can prove by definite testimony the element of cost of production was properly included in the original computation and the invoices which is the ultimate basis of the whole contention.

At the third hearing the record discloses the following:

Judge DALLINGER. What is the issue in this case?

Mr. ROBINEAU. The issue in this case is a matter of the value, the dutiable value, of this imported property.

Judge DALLINGER. What do you claim, foreign value, export value?

Mr. ROBINEAU. We claim cost of production is the proper dutiable value.

Judge DALLINGER. There is no claim for foreign or export value?

Mr. ROBINEAU. Correct, sir.

The case was continued more than once for the purpose of permitting counsel for the importer to obtain evidence from Australia to show that the 8 per centum for profit added by the appraiser had already been added by the subcontractors. There is in evidence an affidavit from L. L. Raymond, general manager and secretary of the exporting corporation, from which the following is quoted:

That he has endeavoured to obtain from said main subcontractors the exact amount or percentage of profit added by them to the cost of production of said machinery, but that the said subcontractors have refused to furnish to him such information, stating that the question of profit is of a nature as to be strictly confidential to them and that they do not feel disposed to reveal said amounts of percentage of profit.

There is also in evidence herein seven affidavits from the said main subcontractors. These affidavits are in substantially the same wording, and the following statement is quoted from one as representative of the others:

That the amount of profit added by said Company to the cost of producing certain totalisator machinery for the Automatic Totalisators, Ltd., is more than eight per cent (8%) of the cost, but that his Company is not desirous of disclosing to anyone the exact amount of profit added by it to the cost of producing the particular machinery as requested by the Automatic Totalisators, Ltd., of Sydney, N. S. W., Australia.

There is also in evidence herein as exhibit 4, the interrogatories of L. L. Raymond, from which the following is quoted:

8. Please state whether or not Automatic Totalisators, Inc. had the sole and exclusive right to negotiate all sales or other transactions concerning the totalisator machine in its importation to the United States?

To the eighth interrogatory he saith:

Yes. Automatic Totalisators, Inc., was the sole and exclusive agent for the importing or selling of my Company's Totalisator machinery in the United States of America. It had exclusive right to arrange all dealings concerning importation of machinery to the United States of America as well as its use and future sales, if any, in the United States of America. It was my Company's sole and exclusive agent.

13. Was the machine sold to Automatic Totalisators, Inc. similar to any other machine theretofore sold or offered for sale by Automatic Totalisators, Ltd. to any purchaser other than the United States importer?

To the thirteenth interrogatory he saith:

The machine sold to Automatic Totalisators, Inc., was the first of its kind ever made by Automatic Totalisators Limited. It was quite unlike other machines

sold or offered for sale by Automatic Totalisators Limited. It was singularly adapted to the particular use to be put to the machine by the American Company.

14. Could the machine sold to Automatic Totalisators, Inc. have been adapted to the use put to the machines sold by Automatic Totalisators, Ltd. for home consumption or to other countries than the United States?

To the fourteenth interrogatory he saith:

The merchandise as supplied could not be used in Australia or so far as I am aware in any other country than North America, it being particularly manufactured for use under the North American system of wagering.

18. Was the machine sold to the American importer such as to be commercially interchangeable for use in Australia or other foreign countries?

To the eighteenth interrogatory he saith:

No. It was specially designed and manufactured to suit conditions in North America and could not be substituted for any of my Company's existing installations in Australia or other foreign countries.

50. Please state whether or not Automatic Totalisators, Ltd. adds any sum to the cost of production of the particular totalisators under consideration to allow for profits?

To the fiftieth interrogatory he saith:

Automatic Totalisators Ltd., did not add anything to the cost of production of this machine to allow for profits to itself.

The evidence before us, instead of showing that the cost of production was not the proper basis of appraisement of this machine, definitely establishes that the cost of production is the proper basis of appraisement. This is definitely shown by the answer to the eighth interrogatory wherein it was stated in substance that the importer herein was the sole and exclusive agent for the importing or selling of the totalisator machinery in the United States; that it had exclusive right to arrange all dealings concerning importation of this machinery to the United States as well as its use and future sales, and it was the sole and exclusive agent in the United States for the importation and sale of these totalisator machines. This is also shown by the contract of purchase.

The evidence hereinbefore detailed not only fails to support the finding of export value by the trial court, but completely destroys any export value for this machine, as that term is defined in section 402 (d) of the Tariff Act of 1930, which is as follows:

(d) EXPORT VALUE. The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The theory of the trial court upon which it found that the export value of this machine was the purchase price thereof appears to be

based upon the argument that Congress never intended the cost of production method of appraisement to be used in place of the purchase price of the article itself. Under this theory only gifts, where there would be no purchase price, could be appraised on the cost of production. The answer to the above is that the law is not so written and we see no occasion for theorizing with the law in a case such as this.

At the argument of this case before this division, counsel for the appellee stated as follows:

* * * I appreciate I am changing the theory of the case that was adopted by my client before we went into the lower court with our appeal where we were considering cost of production as the classification, and our contention in the cost of production theory was the additional duty that was added was unfair.

In changing his theory of this case and attempting to shift to export value to coincide with the decision of the trial court, counsel for the appellee in his argument before this division, evidently realizing he had offered no evidence to establish export value, apparently attempted to rely upon a catalog, illustrative exhibit A, offered by the Government. This is a book comprising some twenty-four pages consisting of pictures illustrating the use of these machines and descriptive printed matter. If this catalog might be considered as an offering of the machines therein described and depicted, the only indication of the market value or price at which they are offered is the following:

For particulars regarding the information required by Automatic Totalisators, Ltd. to enable the company to quote for the supply and installation of Premier Totalisator equipment to meet the requirements of any racecourse, use one of the accompanying forms:

(a) For Clubs already using Pari Mutuel, or some form of Totalisator equipment.

(b) For Clubs using neither Pari Mutuel nor Totalisator equipment.

If possible, a Plan of the Course, showing Buildings, Stands, Enclosures, etc., and copies of race books or cards, should be forwarded with the enquiry to:

The Secretary,
Automatic Totalisators Ltd.
Kembla Building, Margaret Street,
Sydney, N. S. W., Australia.

It is clear from the above quotation that the same contains no indication of a market value or price at which such or similar machines are freely offered for sale to all purchasers in the principal markets of Australia to any one, and can, therefore, be given no weight as establishing an export value. The record contains not one word of evidence tending to establish export value as the proper basis of appraisement. It is therefore clear, and we so hold, that the proper basis of appraisement is the presumptively correct cost of production basis adopted by the appraiser. This leaves for our consideration the question of whether or not the 8 per centum for profit was correctly added by the appraiser.

This question of fact is definitely settled against the contention of the importer by its own witness, the president of the exporting company, as follows:

Please state whether or not Automatic Totalisators, Ltd. adds any sum to the cost of production of the particular totalisators under consideration to allow for profits?

*Automatic Totalisators, Ltd., did not add anything to the cost of production of this machine to allow for profit to itself.* [Italics ours.]

With reference to the addition for profit where the cost of production basis is applicable, section 402 (f) provides as follows:

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

When the cost of production is determined to be the applicable basis of appraisement, we see no escape from the provision requiring the addition for profit. Certainly this cannot be done by arbitrarily adopting the export value as the proper basis of appraisement. By the testimony of the importer's own witnesses it is established that the manufacturer did not add anything to the cost of production of this machine to allow for profit. It is therefore clear that the appraiser correctly added the 8 per centum for profit, and we so hold.

On the record herein we find as fact:

1. That the imported merchandise consists of one totalisator machine.

2. That the same was entered at the invoice price which did not include the addition of any amount for profit to the manufacturer.

3. That the merchandise was appraised as entered plus the addition of 8 per centum for profit under section 402 (f) of the Tariff Act of 1930 on the basis of cost of production.

We therefore conclude as matter of law:

1. That the cost of production is the proper basis of appraisement, and that the appraiser properly and correctly added the 8 per centum to the entered value to cover the item of 8 per centum for profit as provided in section 402 (f) of the Tariff Act of 1930. The judgment of the trial court is accordingly reversed.

### DISSENTING OPINION

DALLINGER, Judge: For the reasons stated in my opinion in the case of *Egry Register Co.* v. *United States*, Reap. Dec. 4690, I dissent.